UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/7/2015___
```

------------------------------------------------------------- X
YEJIDE QUINONES, on behalf of herself and all :
others similarly situated,                   :
                              Plaintiffs,    :
                                             :          OPINION AND ORDER
                  -against-                  :
                                             :          14-CV-9064 (VEC)
PRC MANAGEMENT COMPANY LLC, PRC              :
MANAGEMENT CORPORATION, FRANK                :
LINDE, individually, JOHN CHATZKY,           :
individually, and DAVID GARTENLAUB,          :
individually,                                :
                                             :
                              Defendants.    :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

     Plaintiff Yejide Quinones bring this action on behalf of herself and others similarly

situated against Defendants PRC Management Company LLC, Frank Linde, John Chatzky, and

David Gartenlaub (collectively, the "Defendants"),[1] alleging, *inter alia*, failure to pay overtime

wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") (Count I)

and unlawful withholding of wages in violation of the New York Labor Law ("NYLL") § 193

(Count II).  Defendants moved to dismiss Counts I and II of the Amended Complaint ("Am.

Compl.").  For the following reasons, Defendants' motion is GRANTED in part and DENIED in

part.

---

[1]     Defendant PRC Management Company LLC ("PRC") provides property management services to residential buildings in the New York City.  Compl. ¶ 3, Dkt. 1.  The individually-named defendants are owners, majority shareholders, officers, directors, or managers of PRC.  Am. Compl.¶ 10, Dkt. 20.

## BACKGROUND[2]

At the time of her termination, PRC employed Plaintiff as a compliance manager at a salary of $53,560 per year.  Am. Compl. ¶¶ 23, 30.  Plaintiff's responsibilities included supervising between four and six employees, overseeing tax credit procedures and audits, scheduling compliance projects, and addressing tenant issues.  *Id.* ¶¶ 23-24.  Plaintiff had worked for PRC from 2001 until 2008, when she resigned after the birth of her first child.  *Id.* ¶ 21.  She returned to PRC in February 2010 as a "legal liaison," before she was promoted to manager of the newly-formed compliance department in October 2012.  *Id.* ¶¶ 22-23.

In September 2013, Plaintiff notified PRC that she was pregnant with a second child and that she anticipated taking Family Medical Leave Act ("FMLA") leave in or around April 2014. Am. Compl. ¶¶ 27-28.  Between January 1, 2014, and February 15, 2014, Plaintiff missed six full days of work and was absent for medical appointments for approximately three hours on two additional days.  *Id.* ¶¶ 38-39, 41-42, 44-45.  Plaintiff alleges that her pay for the February 1-15 period, during which she missed four full days of work, was approximately $400 less than it should have been and that she had unused paid leave that should have been applied toward her absences.  *Id.*  Finally, she alleges that wrongful deductions were made to her "leave bank" as reflected on her pay stub.  *Id.*  When Plaintiff complained to the director of human resources, she was told that she had exhausted her paid leave for 2014.  *Id.* ¶¶ 50-51.[3]

Full-time employees of PRC earn six days of paid sick leave per calendar year, ten days of paid vacation leave per year, and one day of paid personal leave every four-month period (*i.e.*,

---

[2]     The Court accepts all well-pleaded allegations as true and draws all inferences in the Plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

[3]     The director of human resources initially informed Plaintiff that PRC had a blanket leave accrual policy but later clarified that Plaintiff would not be able to take vacation leave in advance of its accrual because she would not be accruing leave while on FMLA leave.  Am. Compl. ¶¶ 54-56, 59.

three per year).  *Id.* ¶¶ 32-34; Iannaccone Decl. Ex. C at 14-16, Dkt. 24-3.[4]  PRC's "Partial

Workdays Policy," which applies to all full-time hourly and salaried employees, provides that:

"For the number of hours that the employee takes off from his/her scheduled workday (for

doctor's appointments, leaving early for the day), those hours will be charged to the employee's

sick or vacation balance.  If the employee has fully exhausted his/her paid time off balances, the

un-worked hours will be unpaid."  Am. Compl. ¶ 36; Iannaccone Decl. Ex. C at 16.

    Although Plaintiff's partial-day absences occurred on January 15 and 16, and *not* during

the period that her pay was reduced, she alleges that PRC's partial-day policy makes her a non-

salaried employee under the FLSA.  *See* Am. Compl. ¶¶ 39, 41, 46, 112.  Count I of the

Amended Complaint alleges that PRC's reduction to her usual salary for the February 1 to

February 15 period "destroyed the salary basis on which Plaintiff and others similarly situated

were exempt from the overtime requirements of the FLSA" because pay reductions for salaried

employees are not permitted for less than full-day absences.  Am. Compl. ¶¶ 108-13.  She also

alleges that, under the terms of PRC's leave policy, she had paid leave available.  *Id.* ¶ 111.

Defendants moved to dismiss this claim, arguing that a one-time deduction from a salaried

employee's pay, even if not permitted under the FLSA, does not state a claim for unpaid

overtime wages under the FLSA because those facts do not create an inference that PRC has an

actual practice of treating purportedly salaried employees as hourly employees.  Def. Mem. at

---

[4]    Because the Amended Complaint "relies heavily on" the certain policies set forth in PRC's Employee
Handbook, those provisions are "integral" to the Complaint and the Court shall consider those provisions as fully set
forth in the exhibit submitted by Defendants in support of their motion.  "In considering a motion to dismiss for
failure to state a claim . . . a district court may consider the facts alleged in the complaint[,] . . . documents
incorporated by reference in the complaint," and documents not incorporated by reference if the complaint "relies
heavily upon its terms and effect, thereby rendering the document integral to the complaint," so long as there is no
dispute as to the accuracy or relevance of the document.  *DiFolco*, 622 F.3d at 111 (internal citations and quotation
marks omitted).

13-15.  Moreover, the Defendants argue, even if the one-time deduction means that Plaintiff was not a salaried employee, she has not adequately alleged the existence of an overtime violation.

Count II is not a model of clarity, but it appears to take issue with both the reduction of salary during the February 1 to February 15 pay period and the reductions to her leave allowances, alleging both violated NYLL § 193.  Am. Compl. ¶¶ 116-20.  According to the Amended Complaint, the salary deductions were not "expressly authorized in writing" or for her benefit and the alleged deductions from her leave bank were in excess of her actual leave and "were ostensibly made as fines or penalties for tardiness and/or excessive leave."  *Id.* ¶¶ 116, 120.  Defendants moved to dismiss this claim, arguing that reductions to her "leave bank" and failure to compensate her for unaccrued leave are not "deductions" under NYLL § 193.  Def. Mem. at 20-22.

For the reasons set forth below, Defendants' motion to dismiss Count I is GRANTED; Defendants' motion to dismiss Count II is DENIED.

## DISCUSSION

Defendants moved to dismiss Plaintiff's FLSA and NYLL claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the single occasion on which Plaintiff was not paid for missed work days is insufficient to render Plaintiff non-exempt under the FLSA and that the non-payment of wages when she was absent is not a "deduction" under NYLL § 193.  Def. Mem. at 2-3, Dkt. 25.

### A.  Standard of Review

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007)).  "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Courts must "accept[] as true all material factual allegations in the complaint and draw[] all reasonable inferences in plaintiffs' favor."  *Johnson*, 711 F.3d at 275.  "The same deference does not extend, however, to pleaded legal conclusions."  *Id.* (citing *Iqbal*, 556 U.S. at 678).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" that "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

## B.  Plaintiff Has Not Stated a Claim Under the FLSA

The Amended Complaint alleges that Plaintiff was a salaried employee, but the one-time $400 reduction in her pay stripped her exempt status and entitled her to compensation for two to six hours of overtime per week dating from October 2012 until her termination in April 2014. Am. Compl. ¶¶ 23, 25, 108-09.

The FLSA "entitles employees to time-and-a-half overtime for hours worked in excess of forty hours per week, see 29 U.S.C. § 207(a)(1), except for those employees 'employed in a bona fide executive, administrative, or professional capacity.'"  *Yourman v. Giuliani*, 229 F.3d 124, 127 (2d Cir. 2000) (quoting 29 U.S.C. § 213(a)(1)).  "Regulations promulgated by the Secretary [of Labor] provide that an employee is employed in a 'bona fide executive, administrative, or professional' capacity only if he or she is compensated on a 'salary basis.'"  *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 455 (1997)); *see also* 29 C.F.R. §§ 541.0; 541.602.  "[G]enerally, an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work may not consider the employee to be paid on a salary basis."  *Havey v. Homebound Mortgage, Inc.*, 547 F3d 158, 163 (2d Cir. 2008)

(citation and internal alteration omitted).  "[E]xempt status will be denied," however, "only if there is either an actual practice of making deductions" or, "failing that, a clear and particularized policy– one which effectively communicates that deductions will be made in specified circumstances."  *Id.* (internal alterations and citations omitted); *see also* 29 C.F.R. § 541.603(a)-(b).

An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  "The prohibition against deductions from pay in the salary basis requirement is subject to" certain exceptions, including, *inter alia*, deductions for full-day (but not partial-day) absences "for personal reasons," and absences "occasioned by sickness . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness."  29 C.F.R. § 541.602(b)(1)-(2).  Even if a deduction from salary is improper, the employer loses the FLSA exemption only "if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603(a).  "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis."  *Id.*  "If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."  29 C.F.R. § 541.603(b).

Plaintiff does not dispute that she was paid on a "salaried basis," but instead argues that the one-time reduction of pay "eliminated" her exempt status, that the partial-day leave policy

represents an actual practice of impermissible deductions, and that PRC's accounting of her paid leave was inconsistent with PRC's leave policy.  Pl. Mem. at 7.  Plaintiff fails to state a claim under the FLSA for unpaid overtime wages under any of these theories.

Although Plaintiff worked on a salaried basis since at least October 2012, she alleges only that her salary was improperly reduced for one pay period.  That one-time reduction does not give rise to the inference that PRC did not intend to pay Plaintiff on a salary basis for the entire time she was employed as a compliance manager.  And, even if it did, the exemption would only be lost, and Plaintiff would only be entitled to overtime pay, for the February 1 to February 15 pay period.  *See* 29 C.F.R. § 541.603(b).  She does not allege, however, that she worked *any* overtime during that pay period.  Thus, even assuming that a one-time reduction means the employee is non-exempt for that pay period, Plaintiff has failed to state a cause of action because there is no allegation that she worked more than 40 hours in any week during that pay period.

Moreover, even if PRC's partial-day leave policy reflected a policy that *could* result in improper deductions, the Amended Complaint fails to allege an *actual practice* of making improper deductions, *see* 29 C.F.R. § 541.603(a), or that any such improper deductions resulted in employees not receiving overtime pay to which they would be entitled as non-exempt employees.  Nor can Plaintiff plausibly allege that the $400 reduction in pay during the February 1 to February 15 pay period was a deduction for a partial-day absence, because all of her absences during that period are alleged by her to be full-day absences.  Finally, even if PRC's accounting were inconsistent with its actual leave policy, the miscalculation of her leave does not state a claim for unpaid overtime wages under the FLSA.  In short, Plaintiff's Amended Complaint fails to allege any violation of the FLSA for unpaid overtime wages.

**C.  Plaintiff States a Claim Under NYLL**

The Amended Complaint alleges that PRC violated NYLL § 193 by reducing the days available in Plaintiff's "leave bank" by a greater number of days than she used and by reducing her pay by $400 when that deduction was not authorized in writing and was intended as a fine or penalty for her excessive leave.  Am. Compl. ¶¶ 116-22.  The Amended Complaint alleges that, pursuant to PRC's leave policy, the Plaintiff's "leave bank" as of January 1, 2014, included six days of paid sick leave, ten days of paid vacation leave, and one day of paid personal leave.  *Id.* ¶ 35.  The Amended Complaint further alleges that, although Plaintiff had only used six full leave days and two half leave days through the February 1 to February 15 pay period, her pay stub reflected that her total annual leave bank had been reduced by 8.4 days.  *Id.* ¶ 46.  And, because her pay stub reflected that she had unused paid benefit days, the $400 difference in her salary for that pay period (approximately two days' worth of pay) cannot be explained by a legitimate reading of PRC's leave policy as stated in its Employee Handbook.  *Id.* ¶¶ 47, 51.  Defendants argue that Plaintiff failed to state a claim under NYLL § 193 because the discrepancy in Plaintiff's February 1 to February 15 paycheck was not a "deduction" and her unaccrued benefits were not "wages" within the purview of NYLL § 193.  Def. Mem. at 20-22.[5]

NYLL § 193(1)(b) "explicitly prohibits an employer from deducting monies from the wages of an employee except as required by law or as 'expressly authorized in writing' by and 'for the benefit of the employee,'" and limits the types of deductions an employee may authorize.

---

[5]     Plaintiff argues that her claim is like the plaintiff's claim in *Ren Yuan Deng v. New York State Office of Mental Health*, No. 13-CV-6801 (ALC), 2015 WL 221046, at *17 (S.D.N.Y. Jan. 15, 2015).  In *Ren Yuan*, the *pro se* plaintiff alleged that her employer violated NYLL § 193 when it deducted wages from her paycheck for an "ostensibly unauthorized" doctor's appointment rather than allowing her to use sick leave pursuant to the employer's attendance policy.  *Id.*  The court denied the motion to dismiss, but emphasized that it took the "*pro se* litigant's factual allegations that her wages were arbitrarily reduced as true" in concluding that "her claim live[d] to see another day."  *Id.*  The court did not consider the argument that Defendants advance in favor of dismissal – whether the plaintiff alleged a "deduction" to "wages" under NYLL § 193.

*Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579, 584 (2006).  In *Angello*, the New York Court of
Appeals stated that, as used in NYLL § 193, "[a] 'deduction' literally is an act of taking away or
subtraction."  *Id.*  Consistent with this definition, Plaintiff argues that her "case is clear:
Defendants took money from her pay when she had available leave."  Pl. Mem. at 2.  More
specifically, Plaintiff claims that $400 was "taken away" or "subtracted" from her usual salary
for the February 1 to February 15 pay period, despite her being entitled to that compensation in
the form of paid vacation or sick leave, and that this was a prohibited "deduction from [her]
wages" within the meaning of NYLL § 193(1).

Defendants argue that an employer "has taken a deduction from wages that may be
covered by Section 193 of the Labor Law" only when the employer "pays or credits an employee
for wages earned by that employee, but then reduces the amount of the earned wages for some
ancillary reason" other than the employee's alleged failure to earn those wages.  Def. Reply at
11.  Defendants contend that Plaintiff's claim that the one-time $400 reduction in her usual pay
was an unlawful "deduction" under NYLL § 193 is in reality a dressed-up claim to recover
unpaid wages that must be brought under NYLL § 191 or as a common-law contract claim.  Def.
Reply at 10-11.

Wage supplements in the form of paid vacation and sick leave are "wages" for purposes
of NYLL § 193(1).  "'Wages' means the earnings of an employee for labor or services rendered,
regardless of whether the amount of earnings is determined on a time, piece, commission or
other basis."  NYLL § 190(1).  "The term 'wages' also includes benefits or wage supplements,"
such as "health, welfare and retirement benefits; and vacation, separation or holiday pay."
NYLL § 190(1); *see* NYLL § 198-c(2) (definition of "benefits or wage supplements").
Reductions from wages after compensation is earned or vested are prohibited under NYLL §

193. *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 617 (2008), *answering question certified by* 505 F.3d 129 (2d Cir. 2007). Although reductions from wages are prohibited under NYLL § 193, compensation is not a "wage" within the meaning of NYLL § 190(1) until it is earned or vested. *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012). Once the compensation is earned or vested, an employer's "neglect to pay" those "wages" violates NYLL § 193. *Id.* Whether and when wages are "earned" depends on the terms of the agreement providing for the compensation. *Patcher v. Bernard Hodges Grp.*, 505 F.3d 129, 134 (2d Cir. 2007) (citing *Tuttle v. George McQuesten Co. Inc.*, 227 A.D.2d 754 (3rd Dep't 1996); *Gennes v. Yellow Book of New York, Inc.*, 23 A.D.3d 520 (2d Dep't 2005)).

Accepting the facts alleged in the Amended Complaint, Plaintiff has plausibly alleged a "deduction" from her "wages" to state a claim under NYLL § 193. Plaintiff alleges that, under the terms of PRC's paid leave policy, her wages in the form of six days of paid sick leave and one day of paid personal leave had vested as of January 1, 2014, and that she was entitled to an advance on unearned (or unaccrued) wages in the form of vacation leave. Am. Compl. ¶¶ 34-35, 51. She alleges that this interpretation of PRC's leave policy is supported by the notations on her pay stubs. *Id.* ¶ 40. Even if Plaintiff's interpretation of PRC's leave policy is proven wrong on the merits, based on the allegations in the Complaint and PRC's Employee Handbook, it is impossible to understand the leave balances shown on Plaintiff's February 1 to February 15 pay stub.[6] Drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint's

---

[6]     Defendants argue that Plaintiff misunderstands their policy and that employees "earn" sick leave and vacation leave during the year. Thus, even though an employee's pay stub may show a leave balance of 6 days of sick leave and 10 days of vacation leave on January 1, the employee does not actually have that much leave on January 1. Def. Mem. at 5-6; *accord* Am. Compl. ¶¶ 33-35. Under Defendants' explanation of the policy, employees earn sick leave and vacation leave throughout the year, making it appropriate for PRC to reduce Plaintiff's leave balances because PRC knew that she would not be earning leave when she was out on FMLA. Def. Mem. at 8; *accord* Am. Compl. ¶ 59. Defendant could be right about PRC's actual practices relative to leave, but that is a question of fact that cannot be decided at the motion to dismiss stage.

allegations regarding PRC's reduction of her pay by $400 and deduction of hours from her leave balances in excess of leave taken state a claim under NYLL § 193.

Because Plaintiff states a claim under NYLL § 193, Defendants' motion to dismiss Count II of the Amended Complaint is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Count I is GRANTED with prejudice,[7] and Defendants' motion to dismiss Count II is DENIED.  The Clerk of Court is respectfully directed to terminate Docket Entry 23.

**SO ORDERED.**

**Date:  July 7, 2015**
             **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[7]          Pursuant to the Court's Individual Practices 3.E.ii., if a party elects to respond to a motion to dismiss rather than amend a pleading and the motion to dismiss is granted, subsequent leave to amend the complaint will not be granted.  Plaintiff amended the complaint in response to Defendants' first motion to dismiss.  Plaintiff shall not be provided leave to amend a second time.